## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

SHERRY CRUZ, individually and on )
behalf of all others similarly situated, )
                                       )   No. 1:21-cv-01252
              Plaintiff, )
                                         )
         v.                                  )   Honorable Sue E. Myerscough
                                         )
DITTO TECHNOLOGIES, INC., )
                                         )
            Defendant. )

## DITTO TECHNOLOGIES, INC.'S MEMORANDUM
## <u>IN SUPPORT OF ITS MOTION TO DISMISS</u>

Melissa A. Siebert
(masiebert@shb.com)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel:  (312) 704-7700
Fax:  (312) 558-1195

*Attorney for Defendant*

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................3

LEGAL STANDARD ......................................................................................................4

ARGUMENT ................................................................................................................5

I.     This Court Does Not Have Jurisdiction Over Ditto ...........................................5

    A.    There Is No General Jurisdiction Over Ditto ...............................................6

    B.    Specific Jurisdiction is Lacking ...................................................................7

II.    The Complaint Should Be Dismissed for Improper Venue ...............................9

III.   Cruz's Claims Should be Dismissed Under Illinois' Extraterritoriality Doctrine ............10

IV.   Cruz's Claims are Untenable Under BIPA's Health Care Exclusion ...............................12

V.    Cruz Has Failed to Plead a Viable 15(a) Claim .............................................16

VI.   Cruz's Claims Should be Dismissed Under an Assumption-of-Risk Doctrine ................16

VII.  Dismissal is Appropriate Due to Cruz's Implied Consent................................17

VIII. Cruz Waived her Rights under BIPA and is Estopped from Bringing her Claims...........17

CONCLUSION...............................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
  751 F.3d 796 (7th Cir. 2014) ...................................................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...............................................................................................5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ...............................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................5

*Bray v. Lathem Time Co.*,
  No. 19-3157, 2020 WL 1492742 (C.D. Ill. Mar. 27, 2020)....................................8, 9

*Bryant v. Compass Grp. USA, Inc.*,
  958 F.3d 617 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en
  banc* (June 30, 2020)..........................................................................................2, 16

*Cothron v. White Castle Sys., Inc.*,
  No. 467 F. Supp. 3d 604 (N.D. Ill. 2020) ...............................................................16

*Cruz v. EyeBuyDirect, Inc.*,
  No. 3:21-cv-03135 (C.D. Ill. Apr. 19, 2021) ...........................................................1

*Cruz v. Glasses USA, Inc.*,
  No. 2021-L-000067 (Cir. Ct. Sangomon Cty. Apr. 19, 2021) ...................................1

*Cruz v. M.A.C. Cosmetics*,
  No. 2021-cv-3133 (Cir. Ct. of Sangamon Cty. Apr. 19, 2021) .................................1

*Cruz v. Ulta Beauty*,
  No. 2021-L-000064 (Cir. Ct. of Sangamon Cty. Apr. 19, 2021)...............................1

*Cruz v. Zenni Optical, Inc.*,
  No. 2021-L-000079 (Cir. Ct. Sangamon Cty. May 12, 2021)...................................2

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).................................................................................................6

*Edwards v. Lombardi*,
  2013 IL App (3d) 120518 .......................................................................................16

*Feltmeier v. Feltmeier*,
    207 Ill. 2d 263 (2003) ...................................................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ........................................................................................................6

*Gullen v. Facebook.com, Inc.*,
    No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ................................7, 8

*Hahn v. Cty. of Kane*,
    2013 IL App (2d) 120660 ..............................................................................................17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)........................................................................................................6

*Int'l Travelers Cheque Co. v. BankAmerica Corp.*,
    660 F.2d 215 (7th Cir. 1981) .........................................................................................5

*Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*,
    262 F. Supp. 2d 898 (N.D. Ill. 2003) ...........................................................................4

*Jacobs v. Hanwha Techwin Am., Inc.*,
    No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) .........................................3

*Joe Hand Promotions, Inc. v. Bick*,
    No. 14-3054, 2014 WL 5320264 (C.D. Ill. Oct. 20, 2014).........................................5

*McGoveran v. Amazon Web Servs., Inc.*,
    488 F. Supp. 3d 714, 721 (S.D. Ill. 2020).....................................................................9

*McGoveran v. Amazon Web Servs., Inc.*,
    No. CV 20-1399-LPS, 2021 WL 4502089 (D. Del. Sept. 30, 2021).......................3, 5, 11, 12

*Monroy v. Shutterfly*,
    No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)................................11

*Nagel v. ADM Investor Servs., Inc.*,
    995 F. Supp. 837 (N.D. Ill. 1998) .................................................................................5

*Neals v. PAR Tech. Corp.*,
    419 F. Supp. 3d 1088 (N.D. Ill. 2019) ...............................................................11, 12

*Orlak v. Loyola Univ. Health Sys.*,
    228 Ill. 2d 1 (2007) ......................................................................................................15

*Philos Techs., Inc. v. Philos & D, Inc.*,
    802 F.3d 905 (7th Cir. 2015) .........................................................................................9

*Rivera v. Google, Inc.*,
  238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) ........................................................11

*Rosenbach v. Six Flags Entm't*,
  2019 IL 123186 .......................................................................................12, 17

*RTP LLC v. Orix Real Estate Capital, Inc.*,
  No: 2013-CV-0350, 2014 WL 12696867 (N.D. Ill. 2014) ....................................18

*Salkauskaite v. Sephora USA, Inc.*,
  No. 18-CV-08507, 2020 WL 2796122 (N.D. Ill. May 30, 2020) ...................4, 8, 9

*Santana v. Take-Two Interactive Software, Inc.*,
  717 F. App'x 12 (2d Cir. 2017) .........................................................................17

*Stein v. Clarifai*,
  No. 20 C 1937, 2021 WL 1020997 (N.D. Ill. Mar. 16, 2021) ............................7, 8

*Stiffler v. Lutheran Hosp.*,
  965 F.2d 137 (7th Cir. 1992) ..............................................................................15

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ............................................................................6, 7

*Vo v. VSP Retail Dev. Holding, Inc.*,
  No. 19 C 7187, 2020 WL 1445605 (N.D. Ill. Mar. 25, 2020) .............12, 13, 14, 15

*Walden v. Fiore*,
  571 U.S. 277 (2014)..............................................................................................9

**REGULATIONS**

21 C.F.R. §§ 886.58 .................................................................................................13

45 C.F.R. § 160.103 .................................................................................................14

**STATUTES**

740 ILCS 14/10.........................................................................................................12

740 ILCS 14/15.....................................................................................................4, 16

740 ILCS 14/20.........................................................................................................17

28 U.S.C. 1406(a) ...........................................................................................5, 9, 10

28 U.S.C. § 1391 ..................................................................................................5, 9

**OTHER AUTHORITIES**

Merriam-Webster, https://www.merriam-webster.com/dictionary/patient....................................15

The Illinois Biometric Information Privacy Act ("BIPA") was passed to provide Illinois citizens with a right to control and keep private biometric data, by giving them the right to knowingly consent to its use. Unfortunately, BIPA's combination of liquidated damages, and the ability to use the class action mechanism to create large classes (and large fee demands), has made BIPA ripe for litigation abuse. Today, thousands of BIPA lawsuits congest Illinois' state and federal courts in what has become a massive proliferation of weekly filings. Indeed, Plaintiff Sherry Cruz ("Cruz") alone has recently filed six BIPA putative class actions, in quick succession.

BIPA was *never* intended to protect individuals who, like Cruz, knowingly and repeatedly provide purported biometric data, and then later feign ignorance of their actions for the sole purpose of filing a lawsuit. Cruz is a prime example of a BIPA plaintiff who has subverted the meaning and purpose of BIPA for her own personal gain. Indeed, Cruz's abuse of BIPA to contrive an asserted injury to her privacy is particularly egregious here, because she has targeted a medical technology provider that is clearly within BIPA's broad statutory exclusion for health care settings, as has already been determined by another Illinois federal district court.

Cruz has filed five other BIPA lawsuits, all of them well prior to filing this lawsuit. On April 19, 2021, Cruz filed her first flurry of BIPA lawsuits—four separate suits on the same day, using the same template allegations, each alleging she used a camera to scan her face, and provided her face scan to an entity that purportedly applied facial geometry to her scan. Plaintiff then used her scans to virtually "try-on items" via the web, including medical devices, such as eyeglasses.[1] Cruz's formulaic assertions in these lawsuits that she did not provide her consent to the use of

---

[1] *See Cruz v. EyeBuyDirect, Inc.*, No. 3:21-cv-03135 (C.D. Ill. Apr. 19, 2021) (**Ex. B**); *Cruz v. Glasses USA, Inc.*, No. 2021-L-000067 (Cir. Ct. Sangamon Cty. Apr. 19, 2021) (**Ex. C**); *Cruz v. Ulta Beauty*, No. 2021-L-000064 (Cir. Ct. of Sangamon Cty. Apr. 19, 2021) (**Ex. D**); *Cruz v. M.A.C. Cosmetics*, No. 2021-cv-3133 (Cir. Ct. of Sangamon Cty. Apr. 19, 2021) (**Ex. E**).

alleged facial geometry ignores that she freely admits repeatedly using her computer to access multiple websites, where she claims she used a camera feature to scan her face, which she then used to try on "hundreds or thousands" of eyeglass frames. (**Exs. B, C**).

Less than one month later, on May 12, Cruz ran back to the courthouse to file yet another template BIPA lawsuit, again after voluntarily and repeatedly accessing a website, providing a camera image, and then using the virtual try-on feature of the Zenni Optical ("Zenni") website to be fitted for eyeglasses. *Cruz v. Zenni Optical, Inc.*, No. 2021-L-000079 (Cir. Ct. Sangamon Cty. May 12, 2021) (**Ex. F**). Cruz struck again on June 17, filing the present lawsuit against Ditto Technology, Inc. ("Ditto"), who she admits is the mere vendor of the medical technology that Zenni used to fit her for eyeglasses. Compl. ¶ 6. The present lawsuit is yet another template lawsuit, which merely trades out the defendant—naming Ditto instead of Zenni. The sheer number of prior lawsuits Cruz has commenced belies her identical claims in this later litigation against Ditto (as well as in her earlier lawsuits) that she did not knowingly consent to the provision of her purported biometric data.

Cruz's serial BIPA lawsuits—all of which are premised on activities she willingly, knowingly, and repeatedly undertook—undermine the very purpose and structure of BIPA, which is designed to protect individuals' right to privacy and to allow them to make an informed decision regarding their private biometric information. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 621 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (June 30, 2020). BIPA is premised on providing an informed choice for an individual consumer to opt out of providing covered biometric data after receiving notice of its collection. It was not intended to offer an avenue to easy money for those who willingly, knowingly, and repeatedly make the informed decision to freely share their purported biometric information merely to seek monetary damages.

Said differently, BIPA is not designed to breed professional plaintiffs who deliberately waive any privacy—exactly who we have here.

Cruz cannot avoid the applicability of BIPA's plain statutory provisions and must still meet basic pleading requirements, including those regarding jurisdiction and venue. Cruz is also bound by Illinois's extraterritoriality doctrine and case law limiting BIPA's application to "BIPA violations [that] occur in Illinois." *McGoveran v. Amazon Web Servs., Inc.*, No. CV 20-1399-LPS, 2021 WL 4502089, at *3 (D. Del. Sept. 30, 2021). Additionally, BIPA contains a broad health care exclusion that covers Ditto, precluding BIPA's application at all. Under these provisions, Ditto's medical technology is excluded from BIPA's coverage, and Cruz's use of "try on" technology is, as she alleges in her Complaint, by a patient, irrespective of her litigation-driven motivations. Certainly, the Illinois legislature did not anticipate (nor intend) that BIPA's statutory exclusions for collection and use of purported biometric information to serve the health care needs of patients in a health care setting could be undermined by professional plaintiffs. Additionally, Cruz fails to meet basic BIPA pleading standards. Finally, Cruz's filing spree raises serious questions of implied consent, waiver, and estoppel.

## FACTUAL BACKGROUND

Ditto began as a small, California-based start-up company that manufactures and sells virtual "try-on" technology to eyeglass companies across the country, including Zenni, which is also based in California. *See* **Ex. F**. Ditto's technology helps eyewear companies offer virtual fittings for prescription and non-prescription glasses. Ditto has no control over where these companies, and their patients, use its technology in furtherance of providing health care. In fact, Ditto lacks any knowledge of the identities of its clients' patients or their locations. Ditto simply licenses a medical technology that its clients use on their websites—it is a technology provider. *See Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July

27, 2021) (dismissing BIPA claim against defendant who was "merely a third-party technology provider").

Cruz admits she accessed Zenni's website to try on glasses, and that it was through that website that she used Ditto's virtual try-on technology.[2] Compl. ¶ 22. According to Cruz, Ditto violated BIPA Section 15(a) because it allegedly failed to make a written policy regarding biometric data retention and destruction publicly available to her, and because she claims that Ditto allegedly collected, captured, and or otherwise obtained her "facial geometry" without providing her with advance notice and obtaining her consent under BIPA section 15(b). It bears repeating that Cruz makes these same allegations, based on the same actions (eyeglass fittings), in her separate lawsuits against Zenni (**Ex. F**), EyeBuyDirect (**Ex. B**), and Glasses USA (**Ex. C**), all filed before she ever filed this lawsuit.

## LEGAL STANDARD

When a defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff "bears the burden of demonstrating the existence of jurisdiction." *Salkauskaite v. Sephora USA, Inc*., No. 18-CV-08507, 2020 WL 2796122, at *3 (N.D. Ill. May 30, 2020). The Court may consider jurisdictional affidavits and must "accept[] as true any facts contained in the defendant['s] affidavit[] that remain unrefuted by the plaintiffs." *Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003); *see also Salkauskaite*, 2020 WL 2796122, at *3.

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss an action when it is not filed in the proper venue. Fed. R. Civ. P. 12(b)(3). A plaintiff bears the burden

---

[2] Plaintiff's counsel confirmed Plaintiff last accessed Zenni's site in May 2021. **Ex. G**, Zenni Mot. to Comp. Arb. or Transf. Venue at Ex. 5.

of establishing proper venue. *See Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981). When ruling on a 12(b)(3) motion, the Court must take the allegations in the complaint as true unless they are contradicted by affidavits. *Nagel v. ADM Investor Servs., Inc.*, 995 F. Supp. 837, 843 (N.D. Ill. 1998). Venue is only proper in "a judicial district in which a substantial part of the events giving rise to the claim occurred." *Joe Hand Promotions, Inc. v. Bick*, No. 14-3054, 2014 WL 5320264, at *2 (C.D. Ill. Oct. 20, 2014) (quoting 28 U.S.C. § 1391). If venue is improper, the Court must dismiss or transfer it to the proper district. 28 U.S.C. § 1406(a).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed for failure to state a claim where the plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "accept 'bald assertions' as true" or "credit 'unsupported conclusions and unwarranted inferences.'" *McGoveran*, 2021 WL 4502089, at *3 (citations omitted). Rather, it should "reject allegations that are 'self-evidently false.'" *Id.* (citations omitted).

## ARGUMENT

### I.  This Court Does Not Have Jurisdiction Over Ditto

Ditto is a Delaware corporation with its principal place of business in Oakland, California. Compl. ¶ 2. Ditto does not maintain any offices in Illinois, have any operations is Illinois, or have a registered agent in Illinois. *See* **Ex. A**, Warga Decl. at ¶ 3. Ditto has no Illinois-based customers and has not recorded any licensing revenue from Illinois customers. *Id.* at ¶ 4. Ditto simply licenses technology that its out-of-Illinois customers use as they see fit. *Id.* at ¶¶ 7–8. Ditto has not directed or targeted commercial activities in Illinois. *Id.* at ¶ 4. And importantly, Ditto does not collect any purported biometric information in Illinois. *Id.* at ¶ 9.

### A.  There Is No General Jurisdiction Over Ditto

"The threshold for general jurisdiction is high," *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010), and Cruz has not carried her burden. In fact, "[t]he paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). Thus, to establish this Court has general jurisdiction over Ditto, Cruz must show that Ditto is incorporated or has its principal place of business in Illinois. *See id*. She has done neither, as she alleges that Ditto is a Delaware corporation with its principal place of business in Oakland, California. Compl. ¶ 2.

Further, Ditto's affiliations with Illinois are not "so 'continuous and systematic' as to render [it] essentially at home" in Illinois. *Daimler AG,* at 139 (citation omitted). The only connection Cruz has alleged with factual support is that she is an Illinois citizen—she does not even allege that she used the technology in this state. *See* Compl. ¶ 1. Rather than attempt to assert that Ditto has continuous and systematic contacts with Illinois with any specificity, Cruz instead offers boilerplate regurgitation of the elements of jurisdiction, allegations that are negated by Ditto Declarant. *See* **Ex. A** at ¶ 4.

In any event, Cruz's allegations simply do not suffice. Merely putting a product into the stream of commerce without a restriction on sales in a certain state does not make jurisdiction proper in that state. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (holding the sporadic sales of products through intermediaries, "even if occurring in regular intervals, are not enough to warrant" general jurisdiction (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984))). Ditto's purported Illinois contacts are not so "extensive and pervasive to approximate physical presence." *Id.* Merely licensing technology to nationwide vendors like Zenni, similar to "the maintenance of a public Internet website," is not, without more, sufficient to establish general jurisdiction. *Id.*

**B.      Specific Jurisdiction is Lacking**

Cruz also fails to meet any of the criteria necessary to establish specific jurisdiction. When assessing specific jurisdiction, courts consider "whether the conduct underlying the claims was purposely directed at the forum state" by looking at whether the defendant engaged in "(1) intentional conduct or 'intentional and allegedly tortious' conduct; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 702–03. None of these elements is met here. Cruz fails to assert any facts that could plausibly establish that Ditto directed its business activities at Illinois, and Cruz does not even allege that she utilized Ditto's technology in Illinois.

Case law supports that Cruz's BIPA suit fails for lack of personal jurisdiction. In *Stein v. Clarifai*, No. 20 C 1937, 2021 WL 1020997, at *1–2 (N.D. Ill. Mar. 16, 2021), an Illinois resident claimed that Clarifai, a New York technology company, violated BIPA when it acquired a photo database for use with facial recognition technology. The court explained that "Clarifai operates a globally accessible website, and while the website is accessible in Illinois, Clarifai does not target its website to residents in Illinois." *Id.* at *2. This meant that "the only connection to Illinois is the fact that the plaintiff resides here." *Id.* at *3. That, the court explained, is not enough. This was especially so because the plaintiff offered no evidence of "extensive sales" from Illinois; rather, the minimal sales and revenue that may have come from the state were insufficient to show a website targets Illinois residents. *Id.* at *4. The BIPA claims had to be dismissed because the plaintiff "ha[d] not demonstrated that Clarifai directed its suit-related actions at Illinois." *Id.*

Similarly, in *Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *12 (N.D. Ill. Jan. 21, 2016), an Illinois citizen alleged that Facebook violated BIPA when it "use[d] facial recognition technology on 'every user-uploaded photo,' not just on photos uploaded in or by

residents of Illinois." As such, any "alleged collection of biometric information is not targeted at Illinois residents"; the plaintiff merely alleged "that Facebook operates an interactive website available to Illinois residents." *Id.* at \*2. Like in *Clarifai*, the court dismissed the case, stating: "Because plaintiff does not allege that Facebook targets its alleged biometric collection activities at Illinois residents, the fact that its site is accessible to Illinois residents does not confer specific jurisdiction over Facebook." *Id.* at \*3. As the court explained, "the Seventh Circuit has rejected the notion that an online merchant's operation of an interactive site is sufficient to confer specific jurisdiction on it in every state from which the site can be accessed." *Id.* (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014)).

So too here. Ditto is not registered to do business in Illinois; it does not have operations in Illinois; it does not maintain a place of business in Illinois. *See* **Ex. A** at ¶ 3. None of Ditto's commercial activity is directed or targeted to Illinois. *Id.* at ¶ 4. Ditto does not currently have, and has not historically had, Illinois-based customers. *Id.* Ditto has not received any licensing revenue from Illinois. *Id.* Ditto licensed its try-on technology to Zenni outside of Illinois, and the two companies never met or developed a business relationship in Illinois. *Id.* at ¶ 6. Zenni and Ditto's contractual relationship makes no reference to deploying or servicing the technology in Illinois. *Id.* at ¶ 8. Ditto did not collect any purported biometric information in Illinois. *Id.* at ¶ 9. Finally, Ditto has no control over where its clients and their patients/customers use Ditto's licensed technology. *Id.* at ¶ 8. In short, Ditto has not performed any act that could possibly satisfy the minimum contacts needed for this Court to exercise specific jurisdiction over it. *See Salkauskaite*, 2020 WL 2796122, at \*1 (dismissing BIPA claims for lack of personal jurisdiction where technology provider to retail chain had "no knowledge about the extent to which Sephora deploys its AR technology in Illinois"); *see also Bray v. Lathem Time Co.*, No. 19-3157, 2020 WL 1492742,

at *1 (C.D. Ill. Mar. 27, 2020) (defendant's conduct was limited to its widely accessible interactive website); *McGoveran v. Amazon Web Servs., Inc.*, 488 F. Supp. 3d 714, 721 (S.D. Ill. 2020) (complaint "does not allege any acts [defendant] committed in Illinois, let alone any acts committed in violation of BIPA . . . '[t]he mere fact that a defendant's conduct affects a plaintiff with connections to the forum State is not sufficient'" (citations omitted)).

Thus, even if Cruz did use Ditto's technology in Illinois, it would be irrelevant—Cruz's residence alone is not a sufficient basis for jurisdiction under the facts of this case. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *Philos Techs., Inc. v. Philos & D, Inc*., 802 F.3d 905, 915–16 (7th Cir. 2015) (same).[3] This Court does not have personal jurisdiction over Ditto, and Cruz's complaint must be dismissed.

## II.     The Complaint Should Be Dismissed for Improper Venue

Cruz also fails to establish that venue in this District is proper. Venue is proper in the judicial district where the defendant resides or is subject to the court's personal jurisdiction, or where a substantial part of the events underlying the cause of action arose. *See* 28 U.S.C. §1391(b). If a case is filed in the wrong district, that court can dismiss the case or, if in the interest of justice, transfer it to the district in which it could have been brought. *See* 28 U.S.C. 1406(a).

Here, dismissal is appropriate because venue is not proper in the Central District of Illinois. Ditto is not an Illinois resident and is not subject to personal jurisdiction in Illinois (*see supra*, pp. 5–9), and none of the alleged facts underlying Cruz's Complaint occurred in this District.

---

[3] Last, although this Court need not evaluate whether jurisdiction in Illinois would violate notions of fairness and substantial justice if it finds that there are not sufficient minimum contacts, *Salkauskaite*, 2020 WL 2796122, at *5, it would be unfair to subject Ditto to this Court's jurisdiction. *Bray*, 2020 WL 1492742, at *4 (personal jurisdiction violates fairness and justice when it is random and attenuated and where there is a lack of any suit-related contact).

Ditto is a global company headquartered in Oakland, California and incorporated in Delaware. *See* **Ex. A** at ¶ 2; Compl. ¶ 2. As such, Ditto is a citizen of California and Delaware, but not Illinois. *Id*. Ditto does not collect any purported biometric information in Illinois, nor does it have any control over where eyewear providers and their customers use Ditto's licensed, online technology. **Ex. A** at ¶¶ 7–9. Ditto does not direct or target any of its commercial activities at Illinois. *Id*. at ¶ 4. Ditto currently has and has historically had no Illinois customers, and it has never made licensing revenue from anyone in Illinois. *Id*.

Ditto provided virtual try-on technology to Zenni, which maintains its principal place of business in Novato, California. *Id*. at ¶ 5. The business relationship between Ditto and Zenni developed outside of Illinois, in California. *Id*. at ¶ 6. Ditto does not maintain a place of business or any offices in Illinois. *Id*. at ¶ 3. Ditto and Zenni never met or developed business in Illinois, and they never discussed whether Ditto's licensed try-on technology would be used in Illinois. *Id*. at ¶¶ 6, 8. The companies never had an agreement to deploy or service the technology in Illinois. *Id*. at ¶ 8.

Cruz does not reside within the jurisdiction of the Central District of Illinois, and she does not allege that any of her claims occurred here. Cruz resides in Cook County, Illinois, which is within the jurisdiction of the Northern District. *See* **Ex. G**, Zenni Mot. to Comp. Arb. or Transf. Venue at ¶ 11. She fails to allege any connection whatsoever between her claims and Illinois, let alone this District. Given these facts, Cruz's claims did not originate or occur in Illinois, and the case should be dismissed. Because Cruz was well aware of her residence District at the time of filing, dismissal, not transfer, is warranted. 28 U.S.C. § 1406(a)

## III. Cruz's Claims Should be Dismissed Under Illinois' Extraterritoriality Doctrine

As the Illinois Supreme Court notes, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). In accordance with *Avery*, courts have

consistently held that BIPA has no extraterritorial effect. *See Monroy v. Shutterfly*, No. 16 C 10984, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) ("[N]one of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect."); *Rivera v. Google*, *Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (BIPA "was not intended to and does not have extraterritorial application."). In short, "BIPA violations must occur in Illinois in order for plaintiffs to obtain any relief." *McGoveran*, 2021 WL 4502089, at *3 (dismissing BIPA claim without any evidence or indication "Defendants did anything in Illinois").

Illinois' "extraterritoriality doctrine" justifies dismissal of a BIPA claim where a plaintiff fails to "sufficiently allege facts indicating that the circumstances relating to the alleged transaction occurred primarily and substantially in Illinois." *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1091 (N.D. Ill. 2019); *see Avery*, 835 N.E.2d at 854 (setting test as whether the circumstances "occur[ed] primarily and substantially in Illinois"). In this regard, the court's analysis in *McGoveran* is instructive. There, like here, the plaintiffs' only alleged connection to Illinois was that the plaintiffs provided purported biometric information from Illinois. But, like Cruz, the plaintiffs in *McGoveran* did not allege that the defendants engaged in any conduct in Illinois. *McGoveran*, 2021 WL 4502089, at *3–4. The plaintiffs offered nothing to suggest the defendants created purported biometric templates in Illinois, possessed purported biometric data in Illinois, or stored such data in Illinois. *See id.* Rather, the defendants maintained their data centers or conducted all relevant activity outside of Illinois—and the plaintiffs did not, and could not, contradict these facts. *See id.* This, the *McGoveran* court held was wholly inadequate to satisfy the standard set forth in *Avery*. *See id.* at *4 ("Simply put, there is no indication in the complaint that Defendants did anything in Illinois.").

11

The same is true here. Cruz does not allege *any* purported collection of biometrics or other actions taken by Ditto that occurred "primarily and substantially" in Illinois. In fact, Cruz does not allege any direct interaction with Ditto at all, asserting that she encountered and used Ditto's technology "through" Zenni's website. Compl. ¶ 22; s*ee Neals*, 419 F. Supp. 3d at 1090–92 (dismissing BIPA claim because plaintiff did not allege biometrics were "collected in Illinois"). At best, all Cruz has offered is her residency. However, the mere fact Cruz resides in Illinois is not enough—"[a] plaintiff's residency is not enough to establish an Illinois connection in order to survive a motion to dismiss based on extraterritoriality." *McGoveran*, 2021 WL 4502089, at *4. Plaintiff has failed to offer any alleged conduct on the part of Ditto in Illinois. Nor could she in good faith; Ditto has no connections to Illinois. *See generally* **Ex. A**. To suggest that BIPA could reach activities taken by corporations without any connection to Illinois is untenable. Put simply, "[t]here is no basis in the statutory language to find that BIPA stretches so far." *McGoveran*, 2021 WL 4502089, at *6. Because this Court is not free to expand BIPA beyond its statutory language, *Rosenbach v. Six Flags Entm't*, 2019 IL 123186, ¶ 24, dismissal is appropriate on extraterritorially grounds.

## IV.    Cruz's Claims are Untenable Under BIPA's Health Care Exclusion

Plaintiff's lawsuit should be dismissed because the alleged biometric information was collected from a patient in a health care setting. Generally, BIPA is broadly worded to include "biometric identifiers" and "biometric information." 740 ILCS 14/10. However, BIPA contains a few broad exclusions, one of which has resulted in the dismissal of identical claims involving another Ditto client. Specifically, the Illinois General Assembly broadly excludes from BIPA's reach "information captured from a patient in a health care setting." *Id.* The technology offered by Ditto here satisfies this "Health Care Exclusion," as has already been determined by an Illinois federal district court in dismissing nearly identical BIPA claims. *See Vo v. VSP Retail Dev.*

*Holding, Inc.*, No. 19 C 7187, 2020 WL 1445605, at *2 (N.D. Ill. Mar. 25, 2020). As Cruz alleges, Ditto "manufactures technology that companies utilize to allow customers to 'try on' eyeglasses prior to purchase." Compl. ¶ 7. Both prescription and non-prescription eyeglasses are Class I medical devices under federal regulations promulgated pursuant to the Federal Food, Drug and Cosmetic Act. *See* 21 C.F.R. §§ 886.58, 42–44. Cruz was thus utilizing Ditto's try-on technology (through Zenni's website) to find the right Class I medical device, and she was, undeniably, a "patient in a health care setting" as used in BIPA.

In addition to Zenni, Ditto's technology was also utilized by another company that was previously sued under BIPA based on the same conduct Cruz engaged in here. In *Vo*, the plaintiff filed a BIPA class action against VSP, a manufacturer and seller of prescription and non-prescription eyewear and Ditto client, claiming she used Ditto's "Virtual Try-On" while visiting VSP's website. *Vo*, 2020 WL 1445605, at *1. The circumstances in *Vo* are virtually identical to those here. The *Vo* plaintiff was also a customer of a Ditto client who accessed the client's website and used Ditto's try-on technology though the client to virtually be fitted for eyewear. *See Vo v. VSP Retail Dev. Holding, Inc.*, No. 19-CV-07187 (N.D. Ill. Dec. 03, 2019), Dkt. 11 at 2 (**Ex. H**).

Under these circumstances, the *Vo* Court held that any information allegedly captured by Ditto's technology was "information captured by a patient in a health care setting" and thus excluded from BIPA. In determining that the plaintiff's claims fell under the first prong of BIPA's Health Care Exclusion, the court first turned to the definition of "health care." *Id.* at *2. Under HIPAA, "health care" is defined to include:

> (1) Preventive, diagnostic, therapeutic, rehabilitative, maintenance, or palliative care, and counseling, service, assessment, or procedure with respect to the physical or mental condition, or functional status, of an individual or that affects the structure or function of the body; and (2) Sale or dispensing of a drug, device, equipment, or other item in accordance with a prescription.

45 C.F.R. § 160.103. The *Vo* Court held that Ditto's virtual try-on technology "facilitates [a] health care service by replicating 'the diagnostic services typically performed by an eye care professional,' such as measuring an individual's face to ensure the appropriate fit of corrective eyewear and confirming that eyeglasses are properly positioned over a patient's eyes." *Id*. (brackets omitted). Accordingly, the *Vo* Court held that because Ditto's technology "collected biometric information from a patient in a health care setting," it is excluded from BIPA and dismissed the lawsuit. *Id.*

Further, *Vo* held it was irrelevant that the plaintiff never requested an eye exam, never received an eye exam, never provided VSP with a prescription for corrective lenses, and never received any such prescription. *Id*. First, Ditto's technology "provides a health care service by ensuring the appropriate fit and positioning of corrective eyewear." *Id.* Second, "the initial evaluation of a prospective patient still constitutes a health care service." *Id.* (citing 45 C.F.R. § 160.103). As the *Vo* Court bluntly stated, "[a]n individual cannot escape BIPA's health care exemption simply by choosing to forego the health care service for which they were evaluated." *Id.*

What mattered in *Vo* and what matters here is plain: Ditto's try-on technology provides a health care service by "replicating the diagnostic services typically performed by an eye care professional, such as measuring an individual's face to ensure the appropriate fit of corrective eyewear and confirming that eyeglasses are properly positioned over a patient's eyes." *Id.* And, according to HIPAA, this initial evaluation of a prospective patient is enough to constitute a health care service. *See* 45 C.F.R. § 160.103 ("health care" includes "assessment . . . with respect to the physical or mental condition . . . of an individual or that affects the structure or function of the body").

*Vo* is also consistent with the plain and ordinary meaning of the phrase, "patient in a health care setting." Indeed, "patient" is defined as "an individual awaiting or under medical care and treatment." Merriam-Webster, https://www.merriam-webster.com/dictionary/patient. It is also consistent with Illinois state and federal precedent. Assessing the meaning of "arising out of patient care" in the context of the state's statute of repose, the Illinois Supreme Court interpreted the phrase "patient care" broadly to cover any injuries incidental to an individual's medical care or treatment. *See, e.g.*, *Orlak v. Loyola Univ. Health Sys.*, 228 Ill. 2d 1, 16 (2007). In the same context, the Seventh Circuit concluded that "patient care" in Illinois includes care or support provided by prosthetic devices and other medical materials or equipment that are used to treat health-related conditions. *Stiffler v. Lutheran Hosp.*, 965 F.2d 137, 140 (7th Cir. 1992) ("[M]edical materials are so inextricably linked with every step of today's treatment process that their use almost per se arises 'out of patient care.'"). Between HIPAA, a plain-language dictionary, and case law, an individual, like Cruz, who attempts to purchase—or even just tries on—a Class I medical device virtually or otherwise is a "patient in a health care setting" for the purposes of BIPA.

Respectfully, the decision in *Vo v. VSP* is a legal finding that should be followed here. *Vo* found the exact same Ditto technology fell within BIPA's Health Care Exclusion in a manner that is persuasive in this lawsuit. Here, Zenni is a provider of prescription and non-prescription eyewear and, like VSP, utilized Ditto's virtual try-on technology through its website as a service to actual and potential customers to be fitted for eyewear. Cruz accessed Zenni's website and used Ditto's technology supporting Zenni's services for a virtual fitting of a Class I medical device. As established in *Vo*, it does not matter whether Cruz subjectively considered herself a "patient" while using the technology. *Vo*, 2020 WL 1445605, at *2. She was a patient in a healthcare setting within BIPA's broad exclusion.

## V.     Cruz Has Failed to Plead a Viable 15(a) Claim

Cruz alleges that Ditto "failed to make such a written policy publicly available to Cruz" regarding biometric data retention and destruction. Compl. ¶ 83. Ditto owes no duty to Cruz under 15(a), because any Section 15(a) duty "is *owed to the public generally, not to particular persons* whose biometric information the entity collects." *Bryant v. Compass Group USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020) (emphasis added); *see also Cothron v. White Castle Sys., Inc.*, No. 467 F. Supp. 3d 604, 612 (N.D. Ill. 2020). According to Cruz's counsel, Cruz last accessed Zenni's website in May 2021. **Ex. G** at Ex. 5. BIPA section 15(a) provides that a private entity in possession of purported biometric data has up to three years to delete it. 740 ILCS 14/15(a). Ditto has no obligation to delete any of Cruz's purported biometric data until May 2024, a date well in the future. In any event, as noted in the party's filings in *Vo*, Ditto has such a BIPA-compliant policy in place. *See* **Ex. H**, Dkt. 11 at 5–6 ("Ditto's privacy policy is BIPA-compliant.").

## VI.    Cruz's Claims Should be Dismissed Under an Assumption-of-Risk Doctrine

Assumption of the risk applies when the plaintiff's conduct indicates she "has implicitly consented to encounter an inherent and known risk, thereby excusing another from a legal duty which would otherwise exist." *Edwards v. Lombardi*, 2013 IL App (3d) 120518, ¶ 18. Because the assumption-of-risk doctrine operates as a complete defense to claims for negligence, *Edwards*, 2013 IL App (3d) 120518, ¶ 18, including BIPA claims alleging negligent conduct, it is appropriately raised as a ground for dismissal. Here, Cruz filed five BIPA class actions involving the same or substantially similar virtual try-on technology before filing this lawsuit months later. She cannot now claim she "did not know or fully understand" that her purported biometrics were being collected, captured, or stored when she was scanning her face. Compl. ¶ 58. Cruz's prior complaints establish that she was aware of the purported biometric data she was supposedly providing at the time she visited the prescription eyeglass provider Zenni's website to use Ditto's

16

virtual try-on technology. By continuously choosing to use virtual try-on technology that she claims subjected her to "serious and irreversible privacy risks," Cruz voluntarily undertook and assumed these alleged risks.

## VII.    Dismissal is Appropriate Due to Cruz's Implied Consent

In a word, BIPA is about *control* and a BIPA injury is the loss of control over purported biometric data. *See Rosenbach*, 2019 IL 123186, ¶ 34. When an individual loses that control, the individual has been "aggrieved" under BIPA, and an actionable claim exists. *Id*. A BIPA claim only accrues in the first instance if a person has been "aggrieved"—an injury must exist. 740 ILCS 14/20; *see also, e.g.*, *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003) (A claim can only be made when "facts exist that authorize one party to maintain an action against another."). Cruz cannot possibly claim that she did not impliedly consent to the collection of her purported biometric data. As explained above, Cruz willingly and repeatedly utilized virtual try-on technology prior to filing this Complaint. She knew what she was doing from the start, and she was never "aggrieved."[4] As such, her claims should be dismissed.

## VIII.   Cruz Waived her Rights under BIPA and is Estopped from Bringing her Claims

Based on her conduct, Cruz voluntarily waived her rights under BIPA and is estopped from asserting them here. Waiver is commonly defined as the "intentional relinquishment of a known right." *Hahn v. Cty. of Kane*, 2013 IL App (2d) 120660, ¶ 11. At the time Cruz utilized Ditto's virtual try-on technology, she had already used the same type of technology on at least three different websites. And, significantly, prior to accessing the Zenni website on May 21, 2021, and providing her purported biometric data, she had already alleged that this virtual try-on technology

---

[4] *Cf. Santana v. Take-Two Interactive Software, Inc.,* 717 F. App'x 12, 15–16 (2d Cir. 2017) ("No reasonable person, however, would believe that the MyPlayer feature was conducting anything other than such a scan.").

violated her BIPA-based privacy rights in her other BIPA lawsuits. Cruz was thus aware of her right to privacy under BIPA and nevertheless proceeded to relinquish those rights. Accordingly, Cruz's waiver was "knowing, voluntary, and intentional." *RTP LLC v. Orix Real Estate Capital, Inc*., No: 2013-CV-0350, 2014 WL 12696867, at *1 (N.D. Ill. 2014), and her claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Ditto respectfully requests this Court dismiss Plaintiff's claims against Ditto with prejudice under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) or 12(b)(6).

Dated: October 12, 2021

Respectfully submitted,

**DITTO TECHNOLOGIES, INC.**

By: *Melissa A. Siebert*

Melissa A. Siebert (masiebert@shb.com)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
Fax: (312) 558-1195

*Attorney for Defendant*

**<u>CERTIFICATE OF SERVICE</u>**

I, Melissa Siebert, an attorney, hereby certify that on **October 12, 2021**, I caused a true and correct copy of **DITTO TECHNOLOGIES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** to be filed via the Court's ECF system and served on the counsel of record.

*/s/ Melissa A. Siebert*